William CAMERON, Appellant,

v.

The STATE of Texas, Appellee.

No. 37661.

Court of Criminal Appeals of Texas.

Feb. 3, 1965.

Rehearing Denied April 7, 1965.

Second Motion for Rehearing Denied May 12, 1965.

Holman, Saccomanno, Clegg & Martin, by Jake B. Clegg, Jr., Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, James C. Brough and Theodore P. Busch, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is a violation of Art. 695, Vernon's Ann.P.C., which is the statute dealing with nuisances. Appellant was convicted of carrying on a trade, business or occupation injurious to the health of those persons who then and there resided in the vicinity. Appellant's business was the manufacture of plastic fabric-films. The allegation was that appellant permitted noxious fumes, gases and odors to escape from his premises and permeate the air of the vicinity. The information recited a prior conviction for an identical offense, and the punishment was enhanced under Art. 61, V.A.P.C., the punishment being a fine of $105.00. The parties stipulated the testimony showing the prior conviction.

The state adduced testimony from numerous witnesses showing that before midnight on October 4th and after midnight of the 5th of October of 1963, numerous complaints were made about sickening odors coming from the plant. The state's case is built around the testimony of Charles James, an employee of the Harris County Health Department in the Air and Water Pollution Section. Mr. James testified that he went in the plant in question on October 7th, and told Mr. Cameron of the complaints that he had received. James stated that Mr. Cameron said he was familiar with the situation on October 3rd and 4th that the men on the night shift "passed down to him." Witness James testified that Mr. Cameron told him what somebody else had told him. We shall quote from the record:

Q: "On the evening of October—you were there several days later?"

A: "Yes sir."

Q: "Did Mr. Cameron tell you he had been there on that occasion?"

A: "No sir, he didn't."

Q: "Did he tell you he was not there?"

A: "No sir, he didn't say either way."

Q: "You didn't ask him?"

A: "No sir."

Q: "On that occasion he told you some employees of the Griffolyn Manufacturing Company, if they had been on the night shift, had advised him what had happened?"

A: "Yes sir, on the 3rd and the 4th, two (2) different dates."

Q: "You saw him on the 3rd?"

A: "No sir, on the 7th, and he said that he had the problem on the 3rd, but on the 4th it was actually worse off, and that is when they went in and found this water line plugged up and the material was going out."

The state also relies strongly upon the testimony of appellant's witness, Ralph R. Yoho. His testimony reflects that he received no instructions from Mr. Cameron; that Mr. Cameron was not in charge of his type of work back in October of 1963, and that Mr. Cameron had nothing to do with putting the pieces of plastic together. Mr.

Yoho further testified that there are generally 15 or 20 men on a shift. He testified that in the event the line got clogged up, and he couldn't repair it himself he would go to Mr. Hermann, the plant superintendent; that he would never go to Mr. Cameron, that it wasn't his capacity. The witness further related that he had never seen Mr. Cameron working on the reactor; that Mr. Cameron was the president of the company and tried to get business for the company; that Mr. Cameron is not there all the time and that he (Mr. Cameron) goes on sales trips sometimes.

Mr. Yoho then related that he was "called up—I was told in the evening by Mr. Hermann (in response to the question, 'How about back in October of 1963, was it offensive then?') to go out there and put a charge on this reactor, a catalyst, and I would do that, and on an occasion or two (2) due to the small capacity of the reactor it would boil over and that boiling over would result in an odor, this escaped odor." To a question propounded by the Court: "Who told you to do this?" The witness responded: "Mr. Hermann, the plant superintendent—."

Upon cross-examination the witness, Yoho, stated that if Mr. Cameron told him to do something that he would do it. Also, he said that if Mr. Hermann told him to do something and Mr. Cameron countermanded the order, "naturally I have to obey Mr. Cameron."

Robert Callihan, a witness for appellant, testified that he was a plumber; that his shop was about 100 yards from the Griffolyn Manufacturing plant; that he had done some work for Mr. Cameron; that he repaired some broken lines and that Mr. Hermann or either Mr. Cameron would call and "we would go over there and Mr. Hermann would show us what to do." The witness related that he did not know he had repaired the lines that had been testified to earlier as having been stopped up. He further testified that after he got over to the plant that Mr. Hermann told him what to do most of the time but that sometimes Mr. Cameron would be there and say what to do.

We observe that the entire testimony of the witness Callihan, is silent as to any date that he did work at appellant's plant.

There is certainly nothing in the record to indicate that Mr. Callihan made any repairs to the reactor or lines after the event of October 4th and 5th, or that appellant requested him to do so. The state did not even establish that appellant was in charge of the operations of the company. We could conclude from the evidence before us that appellant had an active vice-president in charge of all operations, as easily as we could conclude that appellant was in charge.

The evidence fails to show any personal connection on the part of appellant with the operation or maintenance of the plant. He cannot be held liable criminally for the acts of his subordinates or employees in the absence of a showing that he was connected therewith in some manner recognized by law, whereby one may be criminally liable for the acts of another or others. McCollum v. State, 165 Tex.Cr.R. 241, 305 S.W.2d 612. In Deramus v. Thornton, 160 Tex. 494, 333 S.W.2d 824 by the Supreme Court of Texas, McCollum is cited with approval on page 829 of their opinion.

The facts do not warrant a conviction in this case.

The judgment is reversed and the cause remanded.

## ON STATE'S MOTION FOR REHEARING

MORRISON, Judge.

The State urges that we reconsider our holding and now say that Cameron, though he was not shown to have been in any manner personally connected with the acts complained of or knowingly permitted the same to be done, should be found guilty.

The majority remains convinced of the soundness of the reasoning of the Supreme Court of this State in Deramus v. Thornton, 160 Tex. 494, 333 S.W.2d 824, and are assured that such reasoning is applicable here.

The State's motion for rehearing is overruled.

WOODLEY, Judge (Dissenting on State's Motion for Rehearing).

The trade or business carried on at 6813 Dixie Drive, in Harris County, on October 4, 1963 under the name "Griffolyn Manufacturing Company" or "Griffolyn Plastic Films" was the manufacturing of plastic fabric films.

The man in charge of the company and its president was appellant. The witness Newby referred to the manufacturing business as "his plant".

The process involved the sealing together of sheets of polyethylene film of various weights and fibers with adhesives and converting these into various types of tarpaulins and other protective covers.

The undisputed evidence shows that offensive odors permeated the atmosphere in the vicinity from time to time. On the night of October 4, 1963, the date alleged in the information, such odors were sufficiently strong to awake persons living in the vicinity, nauseate them and cause them to notify the Health Department and the Police.

The state was not required to prove what caused the offensive odors which came from the manufacturing company. Such evidence, was, however, elicited by appellant from his witness and employee Yoho who testified that some of the chemicals had an odor which, under the method employed at the time of the trial, was eliminated;

that in October 1963, prior to a larger reactor and improved filtering system being installed, there was an odor on occasion, sometimes stronger than others; that on an occasion or two he put a charge on the reactor and *"due to the small capacity* of the reactor it would boil over and that boiling over would result in an odor, this escaped odor—we don't have that overflow problem now with the different reactor improved filtering system."

In view of this evidence introduced by the defendant it is difficult to see how the trial judge could have concluded that the cause of the odors permeating the air was the negligent act of a subordinate employee with which appellant was not in any manner connected and which he did not knowingly permit to be done.

Even so, the majority errs in holding that the trial judge, trier of the facts, was bound to so conclude.

Due to the punishment provided, appeals from convictions for a first offense under Art. 595 Vernon's Ann.P.C. cannot reach this Court on appeal.

If the statute is not to be rendered impotent as a deterrent to air pollution, it should be clearly pointed out who, under the evidence, if anyone, violated the statute, and what negligent act committed by him caused the pollution of the air for which the president and head of the business, whose office was in the plant, is absolved.

Unlike the statute under which McCollum was prosecuted for a single act of polluting the water in the Houston Ship Channel, Art. 595 V.A.P.C. does not provide for a criminal prosecution of the company or corporation. In this connection, I fail to find any evidence that Griffolyn Manufacturing Company or Griffolyn Plastic Films was a corporation.